UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **RUTH MCCOWN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**CAPITAL PAWN OF ALABAMA, LLC.,** a limited liability company<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Ruth McCown ("McCown" or "Plaintiff McCown") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Capital Pawn of Alabama, LLC ("Capital Pawn" or "Defendant") to stop its practice of sending unsolicited text messages to cellular telephones without the recipient's prior express written consent and to obtain redress for all persons injured by its conduct, including injunctive relief. Plaintiff McCown, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff McCown is a natural person residing in the city of Satsuma in the State of Alabama.

2. Defendant is a company doing business in Mobile, Alabama and whose principal address is in Greenville, South Carolina. Defendant does business in this District and throughout the State of Alabama.

## NATURE OF THE ACTION

3. In an attempt to increase its bottom line, Defendant sends text messages to consumers using an autodialer on their cellular telephones without their prior express written consent in an effort to solicit their business. Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the repeated sending of unwanted solicitation text messages to consumers' cellular telephones without consent - and even to those who have demanded that the text messages stop - all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4. By sending these text messages, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance that results from the receipt of such text messages. This is in addition to the wear and tear on their cellular telephones, consumption of battery life, lost cellular minutes, wear and tear to the related data, memory, software, hardware, battery components, and the loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such text messages in the form of the diminished use, enjoyment, value, and utility of their cellular telephones and cellular telephone plans. Furthermore, Defendant sent the text messages knowing they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access their cellphones, including the related data, software, and hardware components.

5. The TCPA was enacted to protect consumers from text messages like those alleged and described herein. In response to Defendant's unlawful conduct, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to cease all solicitation text-messaging activities to cellular telephones without first obtaining prior express written consent, as well as an award of statutory damages to the members of the Classes under the TCPA.

6. Defendant is a pawn shop company. In order to promote different sales and promotions, Defendant contacts consumers with solicitation text messages.

7. But, unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business and services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of repeated and unwanted solicitation text messages to consumers' cellular telephones without their prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") and even to consumers who have expressly requested that the text messages stop.

### A. Defendant Transmits Text Messages to Consumers Who Do Not Want Them

8. Defendant sends text messages to consumers' cellular telephones in an attempt to solicit business which ultimately increases its bottom line.

9. Defendant sends text messages from SMS shortcode 88588.

10. In sending these text messages, Defendant took no steps to acquire the prior express written consent of Plaintiff or the Class Members who received the unsolicited text messages.

11. Defendant sent the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

12. In fact, one of the text messages the Plaintiff received states "For info, visit txtwire.com/sc/c88588." That specific page states that the phone number 88588 which is sending these text messages "are sent from an autodialing system."

# 88588 Mobile Terms & Conditions

## Program Description

The program sends subscribers alerts regarding promotions, coupons, and time sensitive deals from local businesses.

To opt-in, **Text DEALMEIN to 88588**. **8 msgs/mo**. **Msg&data rates may apply**. To opt-out, **Text STOP to 88588**. An opt-out confirmation message will be sent back to you. To request support, **Text HELP to 88588** or email us at support@txtwire.com. <u>Text messages are sent from an autodialing system</u>. Participation is not required for the purchase of goods or services. Subscribers will receive an SMS message if their device does not support MMS.

Figure : https://www.txtwire.com/sc/c88588/

13. Defendant was and is aware that text messages were and are being sent without the prior express written consent of the text message recipients.

14. Defendant knows, or is reckless in not knowing, that its text messages to these cellular subscribers are unauthorized. Ultimately, consumers are forced to bear the costs and annoyance of receiving these unsolicited and unauthorized text messages.

15. Upon information and belief, and via investigation by Plaintiff's attorneys, each of the text messages sent to Plaintiff and the Classes are affiliated with Defendant.[1]

16. In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA.

---

[1] The text messages sent from Shortcode 88588 reference "Capital Pawn Mobile" and Defendant's own website connects telephone number 251-342-1786 to "Capital Pawn - Mobile, Alabama 3428 Cottage Hill [Road] Mobile, AL 36609. *See* http://capitalpawn.com/mobile/.

4

**B. Defendant Transmits Text Messages to Consumers Who Have Expressly Opted-Out**

17. Defendant sends unauthorized text messages to cellular subscribers who have expressly "opted-out" or requested not to receive text messages. But, even if any prior express written consent existed, Defendant is required to honor each stop-request as a termination of any prior consent. Accordingly, any autodialed text message (other than a final one-time confirmation text message from Defendant confirming that the consumer will no longer receive any more text messages) sent to a cellular subscriber after receiving an express stop request is done without prior express written consent.

18. To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. Those guidelines include industry best practices for processing and honoring stop requests from consumers.

19. According to the MMA's October 2012 U.S. Consumer Best Practices for Messaging, "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program. . . END, CANCEL, UNSUBSCRIBE or QUIT should also be opt-out key words for all programs; however content providers should feature the word STOP in their advertising and messaging. . . When sent, these words cancel the subscriber's previous opt-in for messaging." Further, "[t]he content provider must record and store all opt-out transactions."

20. CTIA [2] similarly advises that standards for processing opt-out messages in shortcode programs:

---

[2] The CTIA is an international non-profit organization that audits and enforces the rules surrounding carrier-based text messaging programs. Together, the MMA and the CTIA establish and publish guidelines setting forth accepted industry best practices for mobile marketing.

5

> Functioning opt-out mechanisms are crucial for all text messaging programs. Programs must always acknowledge and respect customers' requests to opt out of programs
>
> …
>
> Short code programs must respond to, at a minimum, the universal keywords STOP, END, CANCEL, UNSUBSCRIBE, and QUIT by sending an opt-out message and, if the user is subscribed, by opting the user out of the program. Subsequent text, punctuation, capitalization, or some combination thereof must not interfere with opt-out keyword functionality.[3]

21. CTIA additionally provides guidance on standards for notifying cellular telephone users about their ability to opt-out of text message programs:

> Recurring-messages programs must also display opt-out instructions at program opt-in and at regular intervals in content or service messages, at least once per month. Opt-out information must be displayed on the advertisement. A program may deliver one final message to confirm a user has opted out successfully, but no additional messages may be sent after the user indicates a desire to cancel a short code program.[4]

22. Again, Defendant simply ignores these accepted industry guidelines. Instead, Defendant makes it difficult for consumers to opt-out or unsubscribe to its solicitation text messages.

23. Despite receiving numerous express stop requests from cellular subscribers, including Plaintiff, Defendant continues to send automated text messages to these subscribers.

24. Defendant knows, or is reckless in not knowing, that its text messages to these cellular subscribers are unauthorized. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

---

[3] *See,* CTIA's Short Code Monitoring Program, *Short Code Monitoring Handbook*, Version 1.6, effective July 16, 2016, page 4, available at https://www.usshortcodes.com/info/static/docs/CTIA%20Short%20Code%20Monitoring%20Handbook%20v1.5.2.pdf

[4] *Id.*

~~28~~25.   In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA.

## JURISDICTION AND VENUE

~~29~~26.   This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it conducts a significant amount of business in this District, lists its headquarters in this district, solicits consumers in this District, sent and continues to send unsolicited text messages to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

~~30~~27.   Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is located in this District, markets to this District, and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

~~31~~28.   In recent years, companies such as Defendant have turned to unsolicited telemarketing as a way to increase its customer base. Widespread telemarketing recruits new customers and encourages existing customers to return and make additional purchases.

~~32~~29.   Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text

messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

~~33~~30. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012). Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, en masse, in an automated fashion without human intervention.

~~34~~31. Yet, in violation of this rule, Defendant fails to obtain any prior express written consent to send solicitation text messages to consumers' cellular telephone numbers.

~~35~~32. At all times material to this Complaint Defendant was and is fully aware that unsolicited telemarketing text messages are being sent to consumers' cellular telephones through its own efforts and/or its agents'.

~~36~~33. Defendant knowingly sent (and continues to send) unsolicited telemarketing text messages without the prior express written consent of the recipients and even to those who had already requested that the text messages stop. In so doing, Defendant repeatedly violated the TCPA**.**

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF RUTH MCCOWN

~~37~~34. On or around April of 2017 McCown received a series of solicitation text messages from SMS shortcode 88588 on her cellular telephone.

~~38~~35.  As an example, on April of 2017 McCown received a text message from SMS shortcode 88588 on her cellular telephone that reads, "Capital Pawn #6: Do not miss out on our Blow Out Sale! Up to 25% off! Offer Exp. 04/15/17. Call (251) 342-1786 - To cancel reply STOP[.]"  For the purpose of getting the unwanted texts to stop, McCown replied to this text message with, "STOP".  McCown then received another text message from SMS shortcode 88588 that read, "Already unsubscribed from group." Plaintiff had already replied "STOP" to a previous text that she received from Defendant.

~~39~~36.  On or around April 20, 2017, McCown received another text message from SMS shortcode 88588 that read, "Capital Pawn #6: With any NEW PAWN, you will receive a FREE DVD while supplies last. Offer Exp. 04/20/17. Call (251) 342-1786 – To cancel reply STOP."  McCown again replied, "Stop."  She then received another text message from SMS shortcode 88588 that read, "Already unsubscribed from group."

~~40~~37.  Plaintiff responded immediately "Then Stop" and "Stop."

~~41~~38.  Despite her stop requests, Defendant again text messaged Plaintiff on April 20, 2017 "Capital Pawn #6 (PM14022) (251) 342-1786: You have unsubscribed and will no longer receive messages. For info, visit txtwire.com/sc/c88588 or email support@txtwire.com.

~~42~~39.  On June 30, 2017, Plaintiff received another text message from 88588 "Capital Pawn #6: 4th Of July starts soon! Come in and show text get 10% off! Offer Exp. 07/03/17. Call (251) 342-1786 –To cancel reply STOP."

~~43~~40.  Plaintiff again responded "Stop" and received a message stating "Already unsubscribed from group."

~~44~~41. Plaintiff received another text message on October 12, 2017 from 88588 "Capital Pawn Mobile: Kenjuan, Autumn Sale!!! All Items 13% off!! Offer Exp. 10/14/17. Call (251) 342-1786 –To cancel reply STOP."

~~45~~42. Plaintiff received another text message on November 1, 2017 from 88588 "Capital Pawn Mobile: Happy Birthday! To celebrate we are giving you 10 % off your next purchase in NOV. Call (251) 342-1786 –To cancel reply STOP."

~~44~~43. 45. McCown has operated her cellular telephone number for approximately seven (7) years.

46~~6~~4. SMS Shortcode is owned and/or operated by Capital Pawn.

45~~7~~. McCown did not request that Capital Pawn and/or its affiliates send text messages to her or offer her its services using an ATDS. Simply put, McCown has never provided her prior express written consent to Capital Pawn to send solicitations text messages to her and she has no business relationship with Capital Pawn.

~~48~~46. By sending unauthorized text messages as alleged herein, Capital Pawn has caused consumers actual harm in the form of annoyance and nuisance. In addition, the calls disturbed McCown's use and enjoyment of her cellular telephone, in addition to the wear and tear on the cellular telephone's hardware (including the cellular telephone's battery) and the consumption of memory on their cellular telephones. In the present case, a consumer could be subjected to many unsolicited text messages as Capital Pawn fails to receive a text-message recipient's prior express written consent and completely ignores requests for the solicitation text messages to stop.

~~49~~47. In order to redress these injuries, McCown, on behalf of herself and the Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits solicitation text messages to cellular telephones.

~~50~~48. On behalf of the Classes, McCown seeks an injunction requiring Capital Pawn to cease all wireless text-messaging activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

49~~51~~. McCown brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seek certification of the following two Classes:

> **Text Message No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent solicitation text messages, (2) to the person's cellular telephone number, and (3) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.
>
> **Text Message Stop Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) sent text messages to, (2) on the person's cellular telephone, (3) for the purpose of selling Defendant's products and services, (4) after the person already replied STOP.

~~52~~50. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

~~53~~51.  **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent text messages to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records.

~~54~~52.  **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to the following:

   (a) whether Defendant's conduct constitutes a violation of the TCPA;

   (b) whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

   (c) whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;

   (d) whether Defendant continued to send text messages to Plaintiff and the members of Classes after expressly being told to stop; and

   (e) whether Defendant obtained prior express written consent to contact any class members.

~~55~~53.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

~~56~~54.  **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as wholes,

thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff.  Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff the Text Message No Consent Class)**

~~57~~55. Plaintiff repeats and re-allege the foregoing paragraphs of this Complaint and incorporate them herein by reference.

~~58~~56. Defendant sent solicitation text messages to cellular telephone numbers belonging to Plaintiff and other members of the Text Message No Consent Class without first obtaining prior express written consent to receive such autodialed solicitation text messages.

~~59~~57. Defendant sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant, also known as a predictive

dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiff and other consumers.

60<ins>58</ins>. By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Text Message No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

6<del>1</del><ins>59</ins>. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Text Message No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

6<ins>0</ins><del>2</del>. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Text Message No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Text Message Stop Class)**

6<del>3</del><ins>61</ins>. Plaintiff incorporates by reference paragraphs 1-57 if fully set forth herein.

6<del>4</del><ins>62</ins>. Defendant sent unsolicited and unwanted text messages to telephone numbers belonging to Plaintiff and the other members of the Text Message Stop Class on their cellular telephones after they had informed Defendant through the Defendant's automated prompt system that they no longer wished to receive such text messages from Defendant.

~~65~~63. Defendant sent the text messages using equipment that had the capacity to store or produce telephone numbers to be called and/or texted using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

~~66~~64. Defendant utilized equipment that sent the text messages to Plaintiff and other members of the Text Message Stop Class simultaneously and without human intervention.

~~67~~65. By sending unsolicited text messages to Plaintiff and other members of the Text Message Stop Class's cellular telephones using a autodialer after they requested to no longer receive such calls, Defendant violated 47 U.S.C. § 227(b)(1)(B) by doing so without prior express written consent.

~~68~~66. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Text Message Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

~~69~~67. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Text Message Stop Class.

### PRAYER FOR RELIEF

~~70~~68. An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes, and appointing their counsel as Class Counsel;

~~71~~69. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

~~72~~70. An order declaring that Defendant's actions, as set out above, violate the TCPA;

~~73~~71. A declaratory judgment that Defendant's text-messaging equipment constitutes an automatic telephone dialing system under the TCPA;

~~74~~72. An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful text-messaging practices;

~~75~~73. An order requiring Defendant to identify any third-party involved in the autodialed text messaging as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

~~76~~74. An injunction requiring Defendant to cease all unsolicited autodialed text-messaging activities, and otherwise protecting the interests of the Classes;

~~77~~75. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive text messages made with such equipment;

~~78~~76. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

~~79~~77. An injunction prohibiting Defendant from conducting any future telemarketing activities until they have established an internal Do Not Call List as required by the TCPA; and

~~81~~78. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

    Respectfully Submitted,

    **RUTH MCCOWN**, individually and on behalf of Classes of similarly situated individuals

Dated: August ~~15~~27, 2018        By:   /s/ Jonathan Festa

                                             Jonathan Festa (FESTJ 7313)
                                             jfesta@howardfesta.com
                                             Howard ~~&~~ Festa, LLP
                                             PO Box 1903, Mobile, AL 36633
                                             Telephone: (251) 431-9364
                                             Facsimile: (251) 431-9368

                                             Manuel S. Hiraldo*
                                             mhiraldo@hiraldolaw.com
                                             HIRALDO P.A.
                                             401 E. Las Olas Blvd., Ste. 1400
                                             Fort Lauderdale, FL 33301
                                             Telephone: (877) 333-9427
                                             Facsimile: (888) 498-8946

                                             Stefan Coleman*
                                             Law@StefanColeman.com
                                             201 S. Biscayne Blvd., 28th floor
                                             Miami, FL 33131
                                             (877) 333-9427
                                             (888) 498-8248

                                             Attorneys for Plaintiff and the Classes

                                             *Pro Hac Vice applications to be filed